**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GUILLAUME AKOUKA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XERIUM TECHNOLOGIES, INC., ROGER A. BAILEY, APRIL H. FOLEY, JAY J. GURANDIANO, JOHN F. MCGOVERN, MITCHELL I. QUAIN, MARK STATON, ALEXANDER TOELDTE, and JAMES F. WILSON,<br><br>Defendants. | **Case No. ________________**<br><br>**COMPLAINT – CLASS ACTION FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Guillaume Akouka ("Plaintiff"), by and through his undersigned counsel, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought as a class action by Plaintiff on behalf of himself and all other similarly situated public shareholders of Xerium Technologies, Inc. ("Xerium" or the "Company") against Xerium and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Xerium, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rule

14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Xerium by Andritz AG ("Andritz"), through its wholly owned subsidiary, XYZ Merger Sub, Inc. ("Merger Sub").

2. On June 24, 2018, the Board caused the Company to enter into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which each common share of Xerium will be converted into the right to receive $13.50 in cash (the "Merger Consideration").

3. On July 16, 2018, in order to convince Xerium's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Xerium; and (ii) the valuation analyses performed by Xerium's financial advisor, TN Capital Advisors LLC and the TN Capital Division of Stone Key Securities LLC ("True North"), in support of its fairness opinion.

5. The special meeting of Xerium shareholders to vote on the Proposed Transaction is forthcoming. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the shareholder vote so that they can properly exercise their corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Xerium's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

7. Plaintiff is, and has been at all relevant times, a shareholder of Xerium common stock.

8. Defendant Xerium is a Delaware corporation, with its principal executive offices at 14101 Capital Boulevard, Youngsville, North Carolina 27596. Xerium is a leading global provider of industrial consumable products and services. The Company's products and services are consumed during machine operation by its customers. Xerium common stock trades on the NYSE under the ticker symbol "XRM."

9. Defendant Roger A. Bailey is, and has been at all relevant times, a director of Xerium.

10. Defendant April H. Foley is, and has been at all relevant times, a director of Xerium.

11. Defendant Jay J. Gurandiano is, and has been at all relevant times, a director of Xerium.

12. Defendant John F. McGovern is, and has been at all relevant times, a director of Xerium.

13. Defendant Mitchell I. Quain is, and has been at all relevant times, a director of Xerium.

14. Defendant Mark Staton is, and has been at all relevant times, a director of Xerium, and currently serves as the Company's President and Chief Executive Officer.

15. Defendant Alexander Toeldte is, and has been at all relevant times, a director of Xerium.

16. Defendant James F. Wilson is, and has been at all relevant times, a director of Xerium, and currently serves as Chairman of the Board.

17. The parties in paragraphs 9 through 16 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with Xerium the "Defendants."

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District under 28 U.S.C. § 1391, because Xerium is incorporated in this District, some of the transaction and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public common shareholders of Xerium (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22. This action is properly maintainable as a class action because:

a) the Class is so numerous that joinder of all members is impracticable. As of June 21, 2018, there were approximately 16.43 million common shares of Xerium outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Xerium will be ascertained through discovery;

b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i. whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

ii. whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii. whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I. Background of the Company and the Proposed Transaction

23. Xerium is a leading global provider of industrial consumable products and services. Its products and services are consumed during machine operation by its customers. The Company operates around the world under a variety of brand names and utilizes a broad portfolio of patented and proprietary technologies to provide customers with tailored solutions and products integral to production, all designed to optimize performance and reduce operational

costs. With 28 manufacturing facilities in 13 countries around the world, Xerium has approximately 2,850 employees.

24. Andritz is a joint stock corporation organized under the laws of Austria with its seat at Graz, Austria with principal executive offices located at Stattegger Strasse 18, 8045 Graz, Austria. Andritz is a globally leading supplier of plants, equipment, and services for hydropower stations, the pulp and paper industry, the metal working and steel industries, and solid/liquid separation in the municipal and industrial segments.

25. On June 24, 2018, Xerium and Andritz issued a joint press release announcing the Proposed Transaction. The press released, stated in relevant part:

**Xerium Technologies to be Acquired by Andritz AG for $13.50 Per Share**

June 24, 2018

YOUNGSVILLE, NC – Xerium Technologies, Inc. (NYSE: XRM) and Andritz AG (WBAG: ANDR) today announced that they have entered into a definitive merger agreement under which Andritz will acquire Xerium for $13.50 per share in an all-cash transaction. This price per share represents a premium of 146.8% to the unaffected share price prior to the announcement by Xerium of a review of strategic alternatives on March 19, 2018. Two of Xerium's largest stockholders, Carl Marks Management Company and Wynnefield Capital, which together represent approximately 20% of Xerium's outstanding common stock, have entered into a voting agreement with Andritz to support the merger.

James Wilson, Chairman of the Xerium Board, said, "This transaction represents a great outcome for Xerium stockholders, and is a reflection of the effort and accomplishment of our employees. It is also a major step forward for the Company's long-term business competitiveness and ability to serve customers."

Mark Staton, Xerium's President and Chief Executive Officer, said, "We are very excited about this coming together with Andritz. Their prestigious reputation in our industry, as well as

> their true global scale, provides a compelling opportunity for our own global workforce. I am convinced that Andritz will be a great long term owner of Xerium."
>
> Completion of the transaction is subject to approval by Xerium's stockholders, regulatory approvals, and other customary closing conditions. The parties expect to close the transaction during the second half of 2018.
>
> TN Capital Advisors, LLC ("True North") served as exclusive financial advisor to Xerium for this transaction, and Latham & Watkins LLP served as legal advisor to Xerium.[1]

26. If the Proposed Transaction is consummated, Xerium shareholders will be cashed out of the Company. As a result, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to vote in favor of the Proposed Transaction.

## II. The Materially Incomplete and Misleading Proxy

27. On July 16, 2018, Xerium filed the Proxy with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

---

[1] Xerium Technologies, Inc., Current Report (Form 8-K), at Exhibit 99.2 (Press Release, dated June 24, 2018)) (June 25, 2018).

28. First, while the Proxy provides several different projection metrics, including Net Income, EBITDA, and Adjusted EBTIDA, it fails to disclose the most important one: Xerium's expected unlevered free cash flows.[2] Xerium's unlevered free cash flows were utilized by True North in their valuation analyses, including their discounted cash flow ("DCF") analysis for Xerium, and are material to the Company's shareholders. Indeed, investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest. Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's shareholders need to assess in determining whether to vote in favor of the merger is clear – is the Merger Consideration fair compensation given the Company's expected unlevered free cash flows? Without Xerium's unlevered free cash flow projections, the Company's shareholders will not be able to answer this question and assess the fairness of the Merger Consideration.

29. Furthermore, EBITDA is not a sufficient alternative to unlevered free cash flows – as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder. Too many investors focus on earnings before interest, taxes, depreciation, and amortization. That makes sense, only if you think capital expenditures are funded by the tooth fairy."[3] Relying solely on EBITDA to provide a fair summary of a company's financial

---

[2] Unlevered free cash flows are used to determine a company's enterprise value. The unlevered free cash flow allows investors to ascertain the operating value of a company independent of its capital structure. This provides a greater degree of analytical flexibility and allows for a clearer picture of the value of the company overall. For this reason, unlevered free cash flows are routinely used to value a company, especially in merger contexts.

[3] Elizabeth MacDonald, *the Ebitda folly*, Forbes (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

prospects has numerous pitfalls. EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value. As a result of these material differences between EBITDA and unlevered free cash flows, many experts recognize unlevered free cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company. Simply put, Xerium's unlevered free cash flow projections are material and their omission renders the projections included in the Proxy misleading.

30. Additionally, complete disclosure of Xerium's unlevered free cash flow projections is particularly important for Company shareholders in light of the fact that shareholders are being asked to vote on a transaction, which has been unanimously endorsed by the Board, that, if consummated, will cause Xerium shareholders to be cashed out of the Company and deny them their right to fully share equitably in the true value of the Company.

31. By electing to disclose *some* of Xerium's projections, Defendants' obligated themselves to speak the ***whole truth*** regarding Xerium's projections by providing ***complete and accurate*** projections because if a proxy discloses financial projections and valuation information, such ***projections must be complete and accurate***, rather than cherry-picking favorable financial metrics to disclose. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

32. With respect to True North's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) Xerium's projected unlevered

after-tax free cash flows, including the period of time covered by the "projection horizon"; (ii) Xerium's terminal value at the end of the projection horizon; (iii) the inputs and assumptions underlying the calculation of the discount rate range of 11.1% to 12.8%; (iv) the inputs and assumptions underlying the calculation of the perpetual growth rates of 0.0% to 2.0%; and (v) the inputs and assumptions underlying the selection of the terminal enterprise value/trailing Adjusted EBITDA multiples of 6.0x to 8.0x. *See* Proxy at 43-44.

33. These key inputs are material to Xerium shareholders, and their omission renders the summary of True North's *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars… This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion ***unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Xerium shareholders cannot evaluate for themselves the reliability of True North's DCF analysis, make a meaningful determination of whether the implied value reference ranges reflect the true value of the Company or was the result of True North's unreasonable judgment, and make an informed decision regarding whether to vote their shares in the Proposed Transaction.

34. With respect to True North's *Comparable Company Analysis*, the Proxy fails to disclose the individual multiples True North calculated for each company utilized. *See* Proxy at 44. The omission of these multiples renders the summary of the analysis and the implied per share value reference ranges materially misleading. A fair summary of a companies analysis requires the disclosure of the individual multiples for each company; merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges. Indeed, the individual multiples are particularly important to Xerium shareholders because True North selectively limited the multiples it used to calculate the reference range being touted to Xerium shareholders using only two of the companies considered—Andritz and Valmet Oyj. Accordingly, True North's *Comparable Company Analysis* is materially incomplete and misleading, and the individual multiples for each company observed must be disclosed so Xerium shareholders can determine whether the implied per share value reference ranges set forth in the Proxy actually reflect the true value of their interest in the Company.

35. Likewise, respect to True North's *Precedent Merger and Acquisition Transactions Analysis*, the Proxy fails to disclose the individual multiples True North calculated

for each transaction utilized. For the same reasons mentioned above, the failure to disclose the individual multiples for each of the transactions that were considered renders the summary of the analysis and the implied per share value reference ranges materially misleading.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R . § 240.14a-9 Promulgated Thereunder)**

36. Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Xerium; and (ii) the valuation analyses performed by Xerium's financial advisor, True North, in support of its fairness opinion.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to common shareholders although they could have done so without extraordinary effort.

42. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that True North reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by True North, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process

leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review True North's analyses in connection with their receipt of the fairness opinions, question True North as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

44. Xerium is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

45. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable

powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

46. Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Xerium within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Xerium, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from

proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C. Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

//

//

//

Dated: July 30, 2018

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
mschreiner@monteverdelaw.com

*Attorneys for Plaintiff*

**COOCH AND TAYLOR, P.A.**

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Tel.: (302) 984-3800

*Attorneys for Plaintiff*